IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOSHUA P., o.b.o. minor. G.L.L.P.,**[1] ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **MARTIN O'MALLEY,**[2] ) <br> **Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> _____) | **CIVIL ACTION** <br><br> **No. 23-1176-JWL** |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits to his minor daughter (the claimant) pursuant to section 1614(a)(3)(C) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits for his minor daughter on May 25, 2021. (R. 17, 146-54). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed appropriately to evaluate the domain of attending and completing tasks.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

To qualify for SSI benefits a child's income and assets (including those imputed from the child's parents) must fall below a certain amount and she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The child claimant bears the burden of proving that her impairment meets or equals a listed impairment. Hall ex rel. Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000).

The Commissioner promulgated regulations which establish a three-step sequential evaluation process to evaluate a child disability case. 20 C.F.R. § 416.924; see also, Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237-38 (10th Cir. 2001). In the first step, if the child is engaging in substantial gainful activity, a finding of nondisability is made and the claim is denied. Id. § 416.924(b). If not, the Commissioner continues

with the second step to determine whether the child has a medically determinable impairment or combination of impairments which is severe. Id. § 416.924(c). If the child has a severe impairment, the Commissioner continues with the third and final step, and determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. Id. § 416.924(d).

An impairment meets a listing if it meets all the medical criteria contained in a listing. Id. § 416.925. An impairment is medically equivalent to a listing if, without considering age, education, or work experience, it is at least equal in severity and duration to the criteria in the listing. Id. § 416.926. To be functionally equivalent, the impairment must result in limitations that functionally equal a listing. Id. § 416.926a. In other words, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. § 416.926a; see also, Briggs, 248 F.3d at 1238. The child's impairment must also meet the duration requirement—lasting or expected to last twelve months—before the child can be found disabled. Id. §§ 416.906, 416.924(d)(1); Davenport v. Apfel, 151 F. Supp. 2d 1270, 1272 (D. Kan. 2001).

To determine functional equivalence, the Commissioner must analyze six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. Id. § 416,926a(b)(1)(i-vi); see also Briggs, 248 F.3d at 1238 (recognizing the six domains).

4

In evaluating a child claimant's ability to function in each domain, the Commissioner will seek information to answer the following questions about whether the claimant's activities are typical of other children the claimant's age who do not have impairments:  (1) What activities can the claimant perform?  (2) What activities is the claimant unable to perform?  (3) Which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments?  (4) Where does the claimant have difficulty with his/her activities--at home, in childcare, at school, or in the community?  (5) Does the claimant have difficulty independently initiating, sustaining, or completing activities?  (6) What kind of help does the claimant need to do his/her activities, how much help is needed, and how often is the help needed?  Id. § 416.926a(b)(2)(i)-(vi).

Functional equivalence will be found only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.  Id. § 416.926a(a).  A "marked" limitation is "a limitation that is more than moderate but less than extreme."  Id.  To constitute a "marked" limitation, the claimant's impairment must interfere seriously with his ability to independently initiate, sustain or complete activities.  Id. § 416.926a(e)(2)(i).  This may mean serious limitation exists in only one activity, or in several activities.  Id.

"Extreme" is the rating given the worst limitations and occurs when a claimant's impairment interferes very seriously with his or her ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(3)(i).  An "extreme" limitation does not necessarily mean a total lack or loss of ability to function but is more than "marked."  Id.;

5

see also, Briggs, 248 F.3d 1238, n.1 (stating definition of "functional equivalency," and "marked" and "extreme" limitations).

## II.     Discussion

Plaintiff acknowledges that the ALJ found less than marked limitations in the area of attending and completing tasks, but claims he "failed to offer a narrative explanation for his conclusion with reasons that were supported by substantial evidence."  (Pl. Br. 5). He argues the ALJ erroneously relied upon outdated opinions by the state agency consultants.  Id., 6.  Plaintiff argues that the record evidence demonstrates the claimant "suffered at least a marked limitation in the domain of attending and completing tasks." Id., 8.  Over the next three pages, Plaintiff cites record evidence which in his view demonstrates at least a marked limitation in the claimant's abilities in this area.  Id., 8-10. He argues the ALJ acknowledged the claimant "had ADHD, was observed to be distractible with poor concentration, and required prompting to stay on task in educational environments … was academically behind and that her classroom teacher opined she had a marked limitation in attending and completing tasks."  Id., 10.  He argues, "the ALJ offered reasons for finding [the claimant] had only a less than marked limitation, but none that supported his decision with substantial evidence."  Id.  He argues this is so because the ALJ erroneously discounted the classroom teacher's assessment of a marked limitation in this area.  Id. 10-11.

Plaintiff also claims the ALJ's reliance on the opinions of the state agency psychological consultants is erroneous because their opinions are undermined by later produced evidence including: the opinion of Plaintiff's classroom teacher, Ms.

Tomlinson; evidence in May of 2022 that the claimant was making inadequate progress toward her individualized educational plan (IEP) goal; evidence in her most recent IEP that the claimant was still reading at first-grade level; and a September 28, 2022 therapy note reflecting worsening of the claimant's ADHD symptoms. (Pl. Br. 12) (citing R. 286, 326-28, 550, 590). He also claims the ALJ failed adequately to articulate the supportability and consistency of the consultants' opinions with respect to the domain of attending and completing tasks. Id. 12-13.

       The Commissioner argues the ALJ's decision is supported by far more than substantial evidence. (Comm'r Br. 5). The Commissioner cites record evidence which in his view constitutes substantial evidence supporting the ALJ's finding less than marked limitations in the domain of attending and completing tasks. Id. 8-9. He points out the ALJ found claimant has limitations in this domain and Plaintiff's Brief merely points to record evidence that claimant has such limitations and argues that in so doing Plaintiff is merely asking the court to reweigh the evidence. Id. 9-10.

       He argues the ALJ's evaluation of Ms. Tomlinson's opinion was reasonable and supported by the evidence. He acknowledges the ALJ did not cite evidence of Ms. Tomlinson's brief subjective observation or of inconsistencies between her opinion and the overall record within the paragraph wherein the ALJ found her opinion regarding the domain of attending and completing tasks not persuasive, but he argues the ALJ's decision should be read as a whole and when so read it refers to record evidence supporting the ALJ's finding. Id. 10-11 (citing R. 22-27). He points out the ALJ's reference to the fact that Ms. Tomlinson had only a few weeks to observe the claimant

before providing her opinions suggesting her opinion was not based upon sufficient observation.  (Comm'r Br. 11).  The Commissioner argues, "the ALJ's finding that the assessment was inconsistent with the record was well supported by the academic and medical records [contained in the record] that suggested some limitation, but not issues severe enough to find marked limitations." Id.

The Commissioner continues, arguing the ALJ did not err in finding the state agency psychological consultants' opinions' regarding this domain are persuasive. Id. 12.  He argues that Plaintiff's claim the consultants' opinions were outdated is without merit because although additional evidence was received after the consultants rendered their opinions, most of the evidence was available to the consultants and the ALJ considered all the evidence and evaluated their opinions in light of all the evidence. Id. 12-13.  He argues the additional evidence received does not show a significant worsening in the claimant's condition or compel finding a marked limitation. Id. 13.

The Commissioner argues that despite Plaintiff's claim the ALJ's evaluation of the opinions was inadequate, the ALJ followed the correct legal standard, properly considered the regulatory factors, and articulated the consistency and supportability factors such that the court may "trace the path of the adjudicator's reasoning." Id. 14 (quoting Nielsen v. Comm'r, SSA, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Plaintiff replies by reiterating his earlier arguments.  He also argues that the Commissioner's arguments are post hoc rationalizations, which are contrary to the law of

the Tenth Circuit.  (Reply 2) (citing Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005)).  Plaintiff argues the ALJ and the Commissioner cited only evidence supporting the ALJ's decision while ignoring evidence supporting the contrary view, and the court "should not be persuaded by [the Commissioner's] post-hoc analysis and mischaracterization of the evidence."  Id. at 3.

Plaintiff argues Ms. Tomlinson's opinion was based on objective, not subjective evidence because it "was based upon directly observing [the claimant]'s behavior that she had 'often' seen in her classroom."  Id. 4 (quoting R. 286).  He also argues discounting Ms. Tomlinson's opinion because it was based on only a few weeks observation is a poor reason because it does not account for observation in the classroom five days a week.  Id.

### A.     The ALJ's Evaluation of Attending and Completing Tasks

The court presents the ALJ's evaluation of this domain in its entirety:

The claimant has less than marked limitations in attending and completing tasks which corresponds with moderate limitations in the paragraph B criteria, concentrating, persisting and maintaining pace.

The claimant was diagnosed with attention deficit hyperactivity disorder.  Treatment notes dated September '21 state that her father described the claimant as hyperactive and she often struggled to sit still.  She acted out and at times was aggressive with her siblings.  She also moved her body excessively when upset (Ex. 4F/4).  Claimant's motor activity was noted as aggressive and agitated (Id at 6).  She was also observed to be distractible with poor concentration.  Her father reported that she had always had difficulties concentrating at school and at home (Id at 7).

Limitations in attending and completing tasks are also supported in Function reports prepared by claimant's father who indicated that claimant did not finish what she started, such as her homework and chores (Ex. 2E).  He also added that claimant had difficulty tying her shoelaces and focusing and that she ran and bounced around a lot and needed to be redirected (Ex. 10E/9).

9

> Interestingly, during claimant's IEP evaluation she was found to be able to self-regulate her own emotions independently (Ex. 7F/17). She was also able to complete all daily living needs independently (Id at 18).
>
> The most recent IEP showed that the claimant continued to need prompting to stay on task and not shut down particularly when asked to do something she did not want to do (Ex. 13F/11). She was able to complete grade level tasks in writing and was noted to benefit from being in the general education classroom for writing instruction (Id.).
>
> The claimant has participated in therapy for her attention deficit hyperactivity disorder since September 2021. In December 2021, the father reported that the claimant was improving in her ability to express herself and she was not engaging in aggressive behaviors as often (Ex. 9F/9). However, in September 2022, the claimant's father shared his concerns with the therapist about claimant's symptoms, particularly hyperactivity and asked to start her on medication (Ex. 14F/5).
>
> Ms. Tomlinson, claimant's classroom teacher opined that claimant had marked limitations in attending and completing tasks. As support, she commented that the claimant often seems to have a faraway look in her eye during instruction work time. (Ex. 17E). This opinion is not persuasive as the [sic] it is only supported by a brief subjective observation and is not consistent with the overall record.
>
> State agency consultative examiners found that the claimant had less than marked limitations in attending and completing tasks. In support, they noted the claimant's diagnosis of ADHD, parental reports of problems with attention and persistence, teachers' reports, and IEP's. Their opinions are consistent with the overall record and are persuasive related to this domain (Exs. 2A, 4A).
>
> Overall, the evidence supports ongoing limitations in attending and completing tasks complicated by her diagnosis of ADHD. Her behavior, while consistent with her diagnosis, is not so severe as to preclude classroom participation, nor is the claimant described as being disruptive. However, her inattention and distractibility somewhat interfere with the claimant's ability to attend to and complete tasks, which is consistent with a less than marked limitation in this domain and moderate limitations in the paragraph B criteria: concentrating, persisting and maintaining pace.

(R. 24-25).

### B. Analysis

The parties agree the ALJ applied the correct legal standard as explained above to evaluate the claimant's claim of childhood disability within the meaning of the Act and the regulations. Plaintiff argues, however, the ALJ erred in finding claimant has a less than marked limitation in the domain of attending and completing tasks. The court does not agree. The ALJ explained his analysis and it is supported by substantial evidence. Plaintiff's contrary argument, while also supported by some record evidence, does not compel a different conclusion. The question for the court is whether the record evidence supports the conclusion reached by the ALJ, not whether Plaintiff can point to evidence supporting his desired outcome. Where the evidence is equivocal, supports the Commissioner's decision, and does not compel a contrary decision, the court must affirm the ALJ's decision.

As a preliminary matter, it is important to note the ALJ found the claimant has limitations in this domain, including a need for some prompting and redirecting, being behind grade level in certain areas, and also with a marked limitation in acquiring and using information. He acknowledged this and explained,

> [The claimant's] behavior, while consistent with her diagnosis, is not so severe as to preclude classroom participation, nor is the claimant described as being disruptive. However, her inattention and distractibility somewhat interfere with the claimant's ability to attend to and complete tasks, which is consistent with a less than marked limitation in this domain.

(R. 25).

Plaintiff's argument the ALJ erroneously discounted Ms. Tomlinon's assessment of a marked limitation in this domain ignores the ALJ's consideration of Ms. Tomlinson's opinions in their totality and the ALJ's specific findings in this domain. Ms.

11

Tomlinson completed a teacher questionnaire entitled "Domain Evaluations" providing her opinion of the claimant's limitations in each of the six domains of functioning. (R. 286-87). She found Plaintiff's limitations extreme in the domain of acquiring and using information, marked in the domains of attending and completing tasks and interacting and relating with others; and she found no limitations in the other three domains. Id. Ms. Tomlinson commented on her limitations in four domains—in each of the domains in which she found limitations and in one of the domains in which she found no limitations: caring for yourself. Id.

The ALJ discussed Ms. Tomlinson's opinion when explaining his evaluation of each of the four domains on which she commented, and in each instance, he found her opined limitations respecting that domain not persuasive. (R. 22-26). He explained Ms. Tomlinson's opinions were expressed in September just a few weeks after the school year began and that the record shows the claimant is shy but warms up to people in time, and she has challenges in participation in class at times but "the evidence does not support the frequency and severity required for extreme limitations" as Ms. Tomlinson opined in the domain of acquiring and using information. (R. 23). In discussing interacting and relating with others the ALJ noted Ms. Tomlinson's comment that the claimant's "Social interaction & play are okay. Academic interaction is non-existent." (R. 287). The ALJ explained,

> there is little support other than a brief subjective statement for this opinion. While the claimant does continue to have some difficulties interacting socially because she is shy, her limitations are not at the marked level. One would expect to see significant limitations such that claimant's behavior would be disruptive to others in the classroom. However, a review of the

> overall record is not consistent with marked limitations [in] interacting and relating with others.

(R. 25). In discussing the domain of caring for yourself, the ALJ explained why he found Ms. Tomlinson's finding no limitations was not persuasive:

> Ms. Tomlinson opined that the claimant had no limitations in this area, stating, "No behavior problems. Sweet, quiet girl." This opinion is not supported by and inconsistent with the teacher's own observations that claimant, "Will not answer questions or share ideas… Seems to have a faraway look in her eye… Academic interaction is nonexistent."

(R. 26) (quoting Ex. 17E, R. 286-87).

In the context of the ALJ's consideration of the entirety of Ms. Tomlinson's opinions one can understand the ALJ's discounting her opinion of marked limitations in attending and completing tasks because "it is only supported by a brief subjective observation and is not consistent with the overall record." (R. 24). Her opinion was discounted because it was made after only a few weeks of observation without allowing the claimant to get used to the new classroom environment, Ms. Tomlinson supported it with a conclusory statement that the claimant often seems to have a faraway look during instruction and worktime, and the record considered as a whole does not show marked limitations in attending and completing tasks. Although the claimant has limitations in attending and completing tasks when compared to her peers, the ALJ explained they were not marked limitations when compared to her peers and Plaintiff has not shown otherwise.

Plaintiff's argument the ALJ erred in relying on the state agency psychological consultants' opinions fails for similar reasons. Although the psychological consultants

13

did not have the benefit of Ms. Tomlinson's opinion, as noted above the ALJ did, found it unpersuasive, and that determination is supported by the evidence.

Moreover, the ALJ considered all the record evidence produced after the sate agency consultants provided their opinions and evaluated the consultants' opinions based upon all the evidence. Specifically, in the domain of acquiring and using information the ALJ noted that "in September 2021 [(five months after claimant's application)], claimant was found to rank in the 3rd percentile in math and the 38th percentile in reading" and that "while showing some progress during the relevant period, she continues to have significant challenges in" acquiring and using information. (R. 22). He found the consultants' opinion of less than marked limitations in acquiring and using information not consistent with the record evidence and explained, "The claimant's challenges in reading, writing, and arithmetic are significant in [sic] the overall record supports it is consistent with marked limitations in this area of functioning. Accordingly, the undersigned does not find the opinions of the state agency consultative examiners persuasive on this point." Id. at 23. He found their opinions that the claimant had less than marked limitations in attending and completing tasks were persuasive because they were consistent with the record evidence. Id. 24-25. On interacting and relating with others, the ALJ found their opinions only somewhat persuasive and explained, "While their conclusion, less than marked limitations, is consistent with the overall record, they failed to cite any of the claimant's behavioral issues noted throughout the record including treatment notes and functional reports." Id. 26. The ALJ also explained his evaluation of the consultants' opinions in the domain of caring for oneself:

14

> State agency examiners also limited the claimant to less than marked in this area of functioning supporting their opinions with references to the claimant's performance of some personal care tasks and not others, the father's observations and teacher observations in the BASC-3 study, discussed above. This opinion is consistent with the overall record showing some ongoing challenges in this domain.

(R. 26). While the state agency psychological consultants did not review all the record evidence, the ALJ did, and explained how he evaluated their opinions based on all the record evidence. Plaintiff has not shown error in his evaluation.

Plaintiff's argument the ALJ failed adequately to articulate the supportability and consistency of the consultants' opinions with respect to the domain of attending and completing tasks also fails. When considered in its entirety, the ALJ's evaluation of the consultants' opinions demonstrates he adequately considered and articulated the supportability and consistency factors so that the reader and reviewer might discern the reasons for the ALJ's determination to find them only somewhat persuasive.

Finally, the court considers Plaintiff's argument that the ALJ and the Commissioner cited only evidence supporting the ALJ's decision while ignoring evidence supporting the contrary view. As noted above, the ALJ cited evidence supporting the contrary view. In fact, the court notes that the ALJ provided a fair and balanced consideration of the evidence. As is usual in a Social Security case the evidence is equivocal. However, the ALJ considered it all, fairly summarized the evidence, and explained the bases for his decision. Although Plaintiff seeks a different outcome and cites evidence which in his view supports that outcome, he does not point to record evidence which compels that outcome.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 10, 2024, at Kansas City, Kansas.

s:/  John W. Lungstrum___
**John W. Lungstrum**
**United States District Judge**